UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

EURYLLESE V. MUHAMMAD,

                Plaintiff,       **No. 6:16-cv-06369(MAT)**
                                        **DECISION AND ORDER**
      -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

---

**I. Introduction**

Represented by counsel, Euryllese V. Muhammad ("Plaintiff") instituted this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying her application for Disability Insurance Benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

**II. Procedural History**

Plaintiff protectively filed Title II and Title XVI applications on May 10, 2012, and May 29, 2012, respectively, alleging disability beginning February 19, 2011, due to depression, anxiety, and a back injury (bulging disc). (T.126, 277-80, 296,

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted, therefore, for Acting Commissioner Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

316, 327).[2] These claims were denied initially and on reconsideration. (T.158, 170-76). Plaintiff requested a hearing, which was conducted via videoconference on May 22, 2014, by Administrative Law Judge Joseph L. Brinkley ("the ALJ"). (T.113-57). Plaintiff appeared with her attorney in Rochester, New York, and testified. Ruth I. Horvath, an impartial vocational expert ("the VE"), also testified. At the hearing, Plaintiff's attorney amended the alleged onset date to January 30, 2012.

On August 15, 2014, after considering the claim de novo and applying the five-step sequential evaluation, see 20 C.F.R. §§ 404.1520, 416.920, the ALJ issued an unfavorable decision. (T.82-101). The ALJ found that despite Plaintiff's "severe" impairments,[3] Plaintiff retains the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with a number of limitations, including, only occasional lifting/reaching overhead with the bilateral upper extremities, operating foot and leg controls with the bilateral lower extremities, climbing ramps/stairs, balancing, kneeling, and stooping; no crawling, crouching, or climbing ladders, ropes, or scaffolds; and only unskilled work limited to frequently engaging in superficial contact with the general public,

---

[2] Citations to "T." in parentheses refer to pages from the transcript of the certified administrative record.

[3] Spinal disorders with radiculitis, right foraminal stenosis, lumbar radiculopathy, patellofemoral syndrome, iron-deficiency anemia, asthma, depression, bipolar disorder, and panic disorder with agoraphobia. (T.88).

occasionally engaging in team/tandem work, and low stress jobs that by their inherent nature do not require high volume production quotas and/or fast paced assembly lines. (T.89-95). In light of her RFC limiting her to unskilled, sedentary work, Plaintiff could not perform her past relevant work ("PRW") as a social services aide, a case aide, a customer service representative, and an emergency medical technician. At step five, the ALJ noted that Plaintiff was a younger individual age 18-44, with at least a high school education. Based on the VE's testimony, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, given her age, education, work experience, and RFC, such as ticket checker and sorter. Accordingly, the ALJ entered a finding of not disabled.

Plaintiff timely requested review by the Appeals Council, and submitted additional medical records for consideration. The Appeals Council denied Plaintiff's request for review on April 6, 2016 (T.1-7), making the ALJ's decision the final decision of the Commissioner.

Plaintiff timely instituted this action. Plaintiff and Defendant have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court will discuss the record evidence further below, as necessary to the resolution of the parties' contentions.

For the reasons discussed below, the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this Decision and Order.

**III. Discussion**

    **A. Plaintiff's Point I: New Evidence Submitted to Appeals Council Requires Remand**

As noted above, iIn connection with her request for review to the Appeals Council, Plaintiff submitted records concerning ongoing treatment Plaintiff received for her back and knee conditions from the following providers: Unity Spine Center for the period from May 30, 2014, to July 3, 2014; Dr. Sarah Bolduc at Unity Family Medicine for the period from September 17, 2014, to September 22, 2014 (T.20-30); Unity Hospital at Parkridge for the period from September 17, 2014, to September 18, 2014 (T.31-60); Dr. Anthony Petraglia at Unity Neurosurgery for the period from September 8, 2014, to September 17, 2014 (T.61-75); and University Orthopedics at Chili for August 27, 2014, and September 12, 2014 (T.76-79). The last of these records indicate that Dr. Petraglia performed a right lateral lumbar laminectomy surgery at the L3-L4 level on September 17, 2014, to relieve the disc herniation compression at her right L3 nerve root. (T.25-60, 69-75).

The Appeals Council declined to review Plaintiff's case, finding that these records were "new information about a later time." (T.2). Plaintiff here argues that this was legal error because the records rejected were new and material evidence that

should have been evaluated with the ALJ's determination at the agency level. Because the Court is remanding the matter on an alternative ground, as discussed below, it need not reach the merits of this contention. On remand, the new evidence will be part of the record reviewed by the ALJ.

**B. Plaintiff's Point II: The RFC is Unsupported by Substantial Evidence.**

Plaintiff contends that remand is warranted because the RFC is not supported by substantial evidence due to the ALJ's mischaracterization of parts of the record, misapplication of the Commissioner's Regulations on weighing evidence, and reliance on a selective reading of the record and "cherry-picking" of evidence that supported the Commissioner's position. (See Plaintiff's Brief (Dkt #12-1) at 17-22).

The Court turns first to Plaintiff's claim that the ALJ characterized various physicians' clinical findings as medical "opinions." In his discussion of the medical records, the ALJ indicated that Drs. Sarah Bolduc and Joanna Wu both had offered "medical opinion[s]." For instance, the ALJ noted that

> [i]n August 2013, [Plaintiff] reported taking Naproxen for the back pain and some right leg weakness, and that the mediation [sic] made her drowsy. She admitted, however, the back pain was not as severe as an episode she had a year prior. (17F) I am affording Dr. Bolduc's medical opinion regarding the claimant's back condition great weight in that he [sic] treated her over a period of time, and it appears that his [sic] opinion/finding is consistent with the examination findings, showing that the claimant appeared to make some improvement despite her complaints of pain.

(T.91). The ALJ purported to give these so-called "opinions" "great weight." (T.91, 92, 93). Plaintiff is correct that the ALJ mischaracterized the nature of the evidence he was discussing in the passage quoted above.

In POMS DI 24503.005,[4] which deals with Categories of Evidence, the Commissioner defines a "[m]edical opinion," for an adult claimant who filed before March 27, 2017, as "a statement from an acceptable medical source (AMS) that reflects judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and the claimant's physical or mental restrictions." Plaintiff's statement to Dr. Bolduc "admitt[ing] . . . the back pain was not as severe" as it was a year ago is, quite clearly, *not* a medical opinion, or even a clinical finding, rendered by Dr. Bolduc. Simply because a statement appears in an acceptable medical source's notes does not automatically transform it into a "medical opinion."

Significantly, the record lacks a physical RFC assessment from Drs. Bolduc or Wu, or any of Plaintiff's other treating physicians. However, to bolster his interpretations of the purported "opinions" of Dr. Bolduc and Dr. Wu, the ALJ emphasized that these doctors "did not provide functional limitations" or "preclude" Plaintiff from working during the relevant period. (T.91-92). This is

---

[4] Available at https://secure.ssa.gov/poms.nsf/lnx/0424503005 (last accessed Oct. 16, 2017).

problematic. The ALJ's interpretation of the treatment records of Dr. Bolduc and Dr. Wu as "opinions", while also stating that these records were missing opinions on Plaintiff's functional capacity, is internally inconsistent and confusing. Moreover, the lack of clarity precludes meaningful appellate review by this Court. See, e.g., Poles v. Colvin, No. 14-CV-06622 MAT, 2015 WL 6024400, at *5 (W.D.N.Y. Oct. 15, 2015) (remanding because "in addition to committing multiple errors in characterizing the medical evidence, the ALJ arrived at internally inconsistent conclusions").

The ALJ also relied on the absence of treating source opinions to diminish Plaintiff's credibility, stating that "during the relevant period, it does not appear that any physician precluded the claimant from work or gave the claimant such severe restrictions that she should be precluded from work." (T.95). Courts in this Circuit have held that "'an ALJ may not rely, as fact-finders in adversarial proceedings customarily do, on the *absence* of probative evidence supporting the opinions of a claimant's expert, without making an affirmative effort to fill any gaps in the record before him.'" Sanchez v. Barnhart, 329 F. Supp.2d 445, 450 (S.D.N.Y. 2004) (quoting Thomas v. Barnhart, No. 01 Civ. 518, 2002 WL 31433606, at *4 (S.D.N.Y. Oct. 30, 2002); emphasis in original); Ubiles v. Astrue, No. 11-CV-6340T MAT, 2012 WL 2572772, at *10 (W.D.N.Y. July 2, 2012) ("The ALJ referenced the consultative examinations with those specialists and apparently penalized Plaintiff for their absence, stating that 'there are no

consultative reports in the exhibit file.' This . . . cannot be harmless error because the ALJ relied on perceived gaps in the medical evidence to find Plaintiff not disabled. . . . . The ALJ also relied on these gaps in the record to discredit Plaintiff's subjective complaints of pain and physical limitations. . . .") (internal citations omitted).

The Commissioner argues that an ALJ does not necessarily need to have a medical opinion in order to make an RFC determination. In Monroe v. Comm'r of Soc. Sec., No. 16-1042-CV, 2017 WL 213363, at *3 (2d Cir. Jan. 18, 2017), on which the Commissioner relies, the Second Circuit concluded that the RFC assessment was supported by substantial evidence, despite the ALJ's rejection of a treating physician's opinion, because the ALJ "reached her RFC determination based on [the treating physician's] contemporaneous treatment notes." Id. at *3. Those notes, the Circuit explained, provided evidence "relevant to [the claimant's] ability to perform substantial gainful activity" as well as "relevant to her functional capacity." Id. However, "Monroe is distinguishable from this case because the ALJ here did not discuss treatment notes with any vocational or functional relevance when he formulated the RFC." Morales v. Colvin, No. 3:16-CV-0003(WIG), 2017 WL 462626, at *3 (D. Conn. Feb. 3, 2017). Instead, the ALJ erroneously characterized the treatment records of Dr. Bolduc and Dr. Wu—which did not provide any insight on Plaintiff's functional limitations—as opinions. Then, incongruously, he drew an adverse credibility inference

against Plaintiff by asserting that the medical record lacked any opinions from her treating sources that she had disabling functional limitations. Thus, contrary to the Commissioner's contention, these errors by the ALJ in interpreting the record, are not harmless.

While in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is "clear" and contains "some useful assessment of the claimant's limitations from a medical source." Staggers v. Colvin, No. 3:14-cv-717(JCH), 2015 WL 4751123, at *3 (D. Conn. Aug. 11, 2015); see also Monroe, 2017 WL 213363, at *3 (when a record "contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required.") (internal quotation marks and citations omitted). Here, as discussed above, the ALJ critiqued the quality of the medical evidence based on a lack of functional assessments by Plaintiff's treating sources. That evidentiary deficiency was caused by the ALJ's failure to fulfill his obligation to the develop the record. See Hooker v. Colvin, No. 13-CV-81-JTC, 2014 WL 1976958, at *7 (W.D.N.Y. May 15, 2014) ("[T]he ALJ is under an affirmative obligation to address evidentiary gaps in the administrative record by recontacting treating sources in order to obtain more detailed information regarding the existence, nature, and severity of the claimed disability.") (citing, inter alia, 20 C.F.R. § 416.912(d);

other citation omitted); Rodriquez ex rel. Silverio v. Barnhart, 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("SSR 85-16 affirms the Commissioner's recognition" the the ALJ's duty to develop the record is a "'bedrock principle of Social Security law'"). Remand is required for development of the record to obtain real opinion evidence from one or more of Plaintiff's treating sources.

**IV. Conclusion**

For the foregoing reasons, the Court finds that the Commissioner's decision was the product of legal error and is not supported by substantial evidence. Accordingly, Defendant's motion for judgment on the pleadings is denied, and Plaintiff's motion for judgment on the pleadings is granted to the extent that the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this Decision and Order. In particular, the ALJ is directed to request physical RFC assessments from one or more of Plaintiff's treating physicians.

**SO ORDERED.**

S/Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   October 26, 2017
         Rochester, New York.